UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| KIM COMBS, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-00073-SRC |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**Memorandum and Order**

Kim Combs requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*  The Court affirms the Commissioner's decision.

**I.      Procedural history**

Combs filed a Title II application for disability insurance benefits on February 22, 2017. Tr. 13; Doc. 14-1 at ¶ 1.  The Social Security Administration initially denied his application on August 28, 2017.  Tr. 13, 74–77.  Combs asked for a hearing before an ALJ on September 22, 2017, Tr. 79, and the ALJ held a hearing on January 16, 2019.  Tr. 13, 34–59, 80–82.  The ALJ denied Combs's application in a decision dated April 3, 2019.  Tr. 13–27.  On February 25, 2020, the Appeals Council denied Combs's request for review.  Tr. 1–3.  As such, the ALJ's decision stands as the final decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.     Decision of the ALJ

The ALJ determined that Combs has not engaged in substantial gainful activity from his alleged onset date of November 23, 2016.  Tr. 15.  The ALJ found that Combs has the following severe impairments:  a history of seizure activity, diabetes mellitus, possible memory loss/neurocognitive disorder, obesity, and migraine headaches.  Tr. 16.  The ALJ found that Combs does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 16–19.

After considering the entire record, the ALJ determined that Combs had the residual functional capacity to perform medium work in that he can lift, carry, push up to 25 pounds frequently, and up to 50 pounds occasionally.  Tr. 19.  Combs can stand or walk for a total of six hours in an eight-hour workday.  *Id*.  The ALJ found that Combs has the following limitations: he cannot climb ladders, ropes, or scaffolds, should have no exposure to unprotected heights, cannot work in a position that requires driving, and should have no more than occasional exposure to dangerous machinery.  *Id*.  The ALJ determined that Combs has the mental residual functioning capacity to understand, remember, and carry out simple, routine, and repetitive tasks and instructions.  *Id*.  He can concentrate, attend, and persist on simple, routine, and repetitive tasks and instructions, and can interact at least occasionally with supervisors and coworkers, but never with the general public.  *Id*.  Combs can also respond appropriately to routine workplace changes.  *Id*.

The ALJ found that Combs cannot perform past relevant work.  Tr. 25.  Combs has at least a high school education and can communicate in English.  *Id*.  After considering Combs's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers

in the national economy that Combs can perform, including dishwasher and hand packer.  Tr. 25–26.  Thus, the ALJ concluded that Combs was "not under a disability."  Tr. 26.  Combs appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III.     Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 404.1520(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 404.1520(a)(1).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 404.1520(a)(3) (emphasis added).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).

5

**IV.     Discussion**

Combs argues that the ALJ committed reversible error by failing to address his allegations of limitations related to the small seizures that he testified occur each month and require 30–40 minutes of rest for recovery.  Doc. 14 at p. 2.  Combs claims that although the ALJ addressed his history of seizures, the ALJ erred by primarily focusing on Combs's "grand mal seizures" and "not address[ing] the alleged limitations stemming from small seizures or how those were accommodated in the RFC." *Id*. at p. 3.  Combs also argues that the ALJ failed to weigh an opinion from Dr. V. Kent Cooper that "address[ed] Combs'[s] 'small seizures.'" *Id*. at p. 2.  Due to the ALJ's alleged failure to consider his testimony and the medical opinion regarding his small seizures in determining the RFC, Combs contends that substantial evidence does not support the ALJ's RFC determination. *Id*.  The Court disagrees.

At the hearing in front of the ALJ, Combs testified that he experiences "smaller" seizures, describing them as "little old things." Tr. 44.  He further stated that he does not believe these seizures are "full-blown thing[s]" because his "medication is stopping [them]." *Id*.  He later explained that he has not had a "full-blown seizure" since he started taking Topamax.  Tr. 46.  In describing these "little old things," Combs stated that "[t]hey'll come on just [for] a brief moment thing.  It'll come on my head and it's always like that thing *before I have a seizure*." Tr. 44. (emphasis added).  Thus, it's possible that Combs himself does not classify these "little old things" as seizures.

Additionally, in contrast to when he has a "full-blown seizure," Combs testified that he does not lose consciousness during these "smaller" seizures. *Id*.  Combs could not provide a definitive answer for how frequently he experienced these "smaller" seizures, but agreed that the

longest he had gone without one was two-to-three weeks. Tr. 45. After experiencing one of these seizures, Combs testified that he would rest for about 30-to-40 minutes. Tr. 45–46.

As Combs acknowledges, the ALJ's opinion discussed Combs's history of seizures, including his testimony at the administrative hearing about his "smaller" seizures. Tr. 20. The ALJ noted that Combs testified that he had seizures multiple times a month; but the ALJ explained that Combs also stated that he can go two-to-three weeks without these seizures, does not lose consciousness during these seizures, and no longer has "full-blown" seizures. Tr. 20. The ALJ further noted that Combs's "medical documentation reflects that his most recent seizure was in March of 2017." Tr. 17 (citing Tr. 766). After providing this background, the ALJ concluded that Combs's "statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 20.

In analyzing a claimant's subjective complaints, the regulations instruct ALJs to consider the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the condition; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) any measures you use or have used to relieve your pain or other symptoms; other factors concerning the claimant's functional restrictions. 20 C.F.R. § 404.1529(3). The above factors stem from the Eighth Circuit's decision in *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). "While ALJs must acknowledge and consider these so-called *Polaski* factors before discounting a claimant's subjective complaints, [the Eighth Circuit] ha[s] held that ALJs need not explicitly discuss each *Polaski* factor. ALJs may discount claimants' complaints if there are inconsistencies in the record as a whole, and [courts] will defer

7

to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Id*. (citations and internal quotations omitted); *see also Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) ("An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)) (citations and internal quotation marks omitted)).

Here, the ALJ explicitly considered the *Polaski* factors, stating,

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the objective evidence contained in the entire case record, the statements and other information provided by medical sources and others, as well as the relevant evidence in the claimant's case record, including but not limited to the claimant's reports of activities of daily living, measures taken to alleviate symptoms, and the location, duration, frequency, and intensity of symptoms.

Tr. 20 (citing 20 CFR 404.1529). The ALJ explained that although Combs has a history of seizure activities, objective tests show only mild neurological problems, and he testified that he no longer has "full-blown" seizures. *Id*.

The ALJ particularly focused on the impact that Combs's medication has had on his seizures. In January 2017, Combs reported that he had not had a seizure for several months and, except for sometimes feeling foggy from the medication, he had no complications and overall felt better with his medication. Tr. 394; *see also* Tr. 21. Combs had a seizure in February 2017, Tr. 387, but reported in June 2017 that he had not had a seizure in six months. Tr. 391; *see also* Tr. 21. Combs also reported that he had no seizures as of July 2018, Tr. 724, and the medical records indicate that Combs's last seizure occurred in March of 2017. Tr. 766; *see also* Tr. 21.

In his reply brief, Combs argues that the medical records corroborate his allegations related to his "smaller" seizures. Doc. 16 at p. 2 (citing Tr. 604, 775, 720). Combs first cites to an August 28, 2017 medical record that states he "has occasional seizures that he is being treated for." Tr. 604.

8

The record does not support Combs's allegations because it does not specify when the last seizure occurred or whether the seizure was small or "full-blown." Thus, without additional evidence, the record simply notes that Combs receives treatment for seizures, which the ALJ repeatedly acknowledged. More importantly, subsequent treatment notes unequivocally state that as late as July 2018, Combs had no seizures and that his last one occurred in March 2017. *See* Tr. 724, 766.

The other records Combs cites likewise offer no support because they merely note that Combs takes Topamax to treat his seizures. Tr. 720, 775. In reaching his RFC determination, the ALJ emphasized how this medication alleviated the severity of Combs's seizures. Thus, these records offer nothing to weaken the ALJ's determination that Combs's statements regarding the limitations caused by his "smaller" seizures did not align with the medical records.

To further support his contention that the ALJ failed to properly address his allegations related to his "smaller" seizures, Combs argues that the ALJ failed to assign weight to Dr. Cooper's opinion that Combs experiences "smaller" seizures one-to-two times per month—an opinion that Combs claims Dr. Cooper gave on February 20, 2018 in a document titled "Restatement of Disability by Attending Physician[.]" Tr. 780. The Court finds this argument lacks merit for numerous reasons.

ALJs must weigh all medical opinions, whether by treating or consultative examiners, based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c) (2017). "While an ALJ

9

must consider all of the factors set forth in 20 CFR § 404.1527(d),[2] he need not explicitly address each of the factors." *Derda v. Astrue*, No. 4:09CV01847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011) (collecting cases). Generally, ALJs should give a treating physician's opinion controlling weight, but they "may elect under certain circumstances not to give [the] opinion controlling weight." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citation omitted). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (citation omitted). "Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand." *O'Keefe v. Saul*, No. 2:19-CV-00043 SRC, 2020 WL 6287405, at *3 (E.D. Mo. Oct. 27, 2020) (quoting *Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004)).

Combs claims that the ALJ failed to assign weight to the medical opinion present in the "Restatement of Disability by Attending Physician" document in question, Doc. 14 at p. 2 (citing Tr. 780), but the record contains multiple copies of this same exact document. *Compare* Tr. 480 *with* Tr. 780. And the ALJ addressed the copy of this document located at Tr. 480, assigning it little weight for three reasons. Tr. 24. First, the ALJ found that the medical opinion was rendered in connection with Combs's workers-compensation claim, which involves a different standard than social security benefits. *Id*. Next, he discredited the opinion due to the adversarial nature of workers-compensation claims. *Id*. He noted that physicians retained in those claims "are often biased and do not provide a truly objective opinions." *Id*. "Third, the opinion[] regarding the claimant's status as disabled or not disabled go[es] to an issue reserved to the Commissioner and therefore cannot be given any weight." Tr. 25; *see also Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (quoting *Vossen v.*

---

[2] The 2011 version of 20 C.F.R. § 404.1527, at issue in *Derda*, listed the factors for ALJs to consider in determining weight to give medical opinions in section (d). The regulation has been amended and the latest version lists the factors in section (c).

10

*Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010)). Thus, contrary to Combs's suggestion, the ALJ assigned weight to this opinion and gave good reasons for assigning it only little weight. *Prosch*, 201 F.3d at 1013.

Moreover, though Combs states that Dr. Cooper authored the "Restatement of Disability by Attending Physician[,]" the record is unclear whether Dr. Cooper actually authored this document. As the Commissoner notes, "it appears that [Combs] himself is unsure of the author of this document" because "in his Statement of Material Facts, [Doc 14-1 at ¶ 41, [Combs] states that this document is from 'a provider from the Kneibert Clinic Primary Care.'" Doc. 15 at p. 6 n.2. Additionally, the signature on the document itself is illegible and the examining physician is not otherwise apparent from the document. The affixed signature also does not closely match Dr. Cooper's signature in other documents. *Compare* Tr. 780 *with* Tr. 478. The Court therefore defers to the ALJ's treatment of this document and its internal opinion as stemming from a medical source other than Dr. Cooper.

In sum, Combs offers only his own testimony and a single line in a medical statement purportedly authored by Dr. Cooper to prove that the severity of his "smaller" seizures warranted a different RFC determination. As explained above, the ALJ considered Combs's testimony and found it unsupported by the record and gave good reasons for assigning little weight to the medical opinion purportedly offered by Dr. Cooper. Additionally, the ALJ accounted for any potential seizure activity in the RFC by finding that Combs could never climb ladders, ropes, or scaffolds, should have no exposure to unprotected heights, could not work in a position that requires driving, and should have no more than occasional exposure to dangerous machinery. Tr. 19–20. Thus, the ALJ considered Combs's allegations of "small seizures" in determining Combs's RFC and the Court finds that substantial evidence supports the ALJ's RFC determination.

**V.     Conclusion**

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007). Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Combs's [1] Complaint with prejudice. A separate judgment will accompany this Memorandum and Order. The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 29th day of September 2021.

_SL R. CR_

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**